Today, number 17-3090 United States v. Todd, Mr. Schuman, and Ms. McKillop. Good morning, and may it please the court. My name is Jacob Schuman, and I represent Linda Todd. May I please reserve four minutes of my time for rebuttal? Sure can. Thank you. This case presents two issues related to Ms. Todd's sentencing. Has execution of the sentence been suspended during the pendency of this appeal? No. In fact, she served all of her prison time. She was released about a week or two ago, and now she's doing a supervised release. That's right, 24 months of supervised release. Okay. So the first issue in this case turns on the Supreme Court's decision in Tapia v. United States, which interpreted Section 3582A of the Sentencing Reform Act to set a simple rule for district courts. Do not think about prison as a way to rehabilitate an offender. This same rule applies whether a court is sentencing someone for a conviction or for a supervised release violation, and therefore overruled this court's prior holding in Doe for three reasons. Well, before you get into three reasons, assume that we've read the briefing and we know what's going on here. Help us understand why it's reversible error for the district court in this case to talk about rehabilitation when, in fact, your client's attorney at the hearing spoke about nothing but drug rehabilitation. The entire conversation that your client's lawyer presented to the district court was about rehabilitation, and the district court responded to that and to your client's allocution about rehabilitation. How can it be reversible error for the district court to respond to the very arguments presented by your side and then have you come to this court and say, that was wrong, wrong, wrong. The district court should be reversed. Well, respectfully, Your Honor, I don't think that defense counsel introduced the addiction or rehabilitation issue into the hearing. The whole point of the hearing was that Ms. Todd had flunked out of drug treatment, couldn't get clean, so everybody talked about drug treatment and addiction. But to answer your question, the law is very clear that rehabilitation cannot be a purpose of a prison sentence. Right. The court can respond to an argument about rehabilitation, but it cannot go further and say that the purpose of the sentence of imprisonment is to rehabilitate. And did the district court here say the purpose of this sentence is rehabilitation? Because if that's what the court said, I'd like you to point me to the language in the appendix where the court says, the purpose of this sentence is rehabilitation. Sure. So I will point you to some precise phrasing. I also think the court should take in the whole context of both revocation hearings. So I think the key language here is on pages 122 of the appendix and then later 133 to 34 of the appendix. On page 122, the court told Ms. Todd, in the final analysis, none of these programs are successful unless they click with you and you're able to monitor yourself. Right. And that's in the context of the discussion your client and your client's lawyer brought up. Is the court to be faulted for actually responding to what your client's lawyer talked about? The court did more than just respond. Defense counsel argued that Ms. Todd should be given the chance to have another round of drug treatment outside of prison. The court could have said, no, at this point I'm going to punish you with a prison sentence. I'm going to deter you with a prison sentence. But that's not what the court said. The court said the plan you hoped would work, noncustodial treatment, does not work, and it hasn't yet clicked with you, and what you really must have is ongoing 24-7 supervision. So in connection with that deterrence, ongoing 24-7 supervision. In theory, I guess a court could say I'm going to deter you with supervision, but that's not what the court said here. The court said that you need ongoing 24-7 supervision, during which it would be my expectation you'll be participating in both mental health treatment programs and drug addiction treatment. And if you look at the full context of both hearings, at the first hearing, the court placed Ms. Todd into inpatient treatment. And the court said that we're going to give you another chance. It's a little bit closer supervision. That was the first hearing. After she failed to complete that treatment program at the second hearing, the court said, oh, you need 24-7 supervision to complete drug treatment. So it's clear that the purpose of the 24-7 supervision that Ms. Todd would get in prison was to rehabilitate her, not to deter her. Well, if it were, quote, clear, then I'm assuming that the government would be in a position and would have to say, hey, this is clear. This is a TAPIA violation. So it's not really clear. You're reading between the lines and saying if you look at all this, the most logical conclusion is that that's what's going on. But at no point did the district court say, I'm sending you to prison for rehabilitation. The court never said that. This court has never used a kind of magic words test to assess whether or not a court has taken into account an impermissible sentencing factor or ordered it sentencing. The court takes all of it into account and, based on the full context, tries to understand what the court was thinking when it imposed the sentence. And I think if you do look at the full context here, including the first hearing and the second hearing, I think it's clear that rehabilitation was a key factor in the court's decision to sentence Ms. Todd to prison. Well, what's for purposes of discussion say there was some ambiguity? We weren't as sure as you are that that's what happened. And if there was some ambiguity and we were trying to shape a rule that would be a guide and a help to district courts, how would we go about doing that? As the briefing reveals, there are some courts that talk about this in terms of a dominant purpose test. The Vandergriff case on the 11th Circuit seems to be a little sharper and clear cut on that. Should we be following the sort of DelVal test from the 1st Circuit, that dominant purpose test, or should we be following what appears to be the stricter language of the Vandergriff test from the 11th Circuit? So I think the consideration test is, first of all, I should say, under either test, I think the court here erred because I think it considered rehabilitation and I do think rehabilitation was a dominant factor. But putting that aside, I think the consideration test is superior. It's more faithful to the Supreme Court's decision in Tapia. What the Supreme Court said in Tapia, and this would be a great rule to quote as the guidance to the court, the court should consider the specified rationales of punishment except for rehabilitation, which it should acknowledge as an unsuitable justification for a prison term. That's different, a justification for a prison term. But you're saying a court can't comment at all? No, that's not what I'm saying. What the Supreme Court said in Tapia is that the court can address the defendant about the opportunities that will be available to them for treatment in prison. So if the court in this case said, Ms. Todd, I'm punishing you for violating the conditions of your release and I'm deterring you from violating the conditions again with a prison sentence, and by the way, while you're in prison, I encourage you to seek out drug treatment, that would be fine. But that's not what happened here, I think. No, you're asking us to infer that's not what happened here. It's really not that clear. And how can we find plain error under these circumstances, that the error of the district court was so plain that the reversal is warranted? Well, I think that no matter how you read the transcript, I think that even if the court thinks there are other factors at play, including deterrence, I do think it's clear that there was some consideration of rehabilitation. And in that respect, this case is just like Tapia. Because in Tapia, the court considered two factors, deterrence and rehabilitation. And the Supreme Court found that... There's much error in Tapia in terms of understanding that the length of the prison term was key to the RDAP program. That's true, but that's not necessary to violate Section 3582A. In Tapia, the court said that there's error if the sentencing court imposes or lengthens a prison sentence to enable offender to complete a treatment program or otherwise to promote rehabilitation. And that's what happened here. The court wanted to give Ms. Todd 24-7 supervision in prison so that she could complete drug treatment. That's what it said. That's clear from both hearings. Do we even need to reach the Tapia error question? Well, I think there's another issue here which is very clear, which is that the court never mentioned, never calculated a guidelines range for Ms. Todd. That's the first step in the three-step sentencing. Is it clear that the disposition report presented by the probation office did have a guideline range calculation? That is clear, and in that respect, this case is just like Rissmiller. In Rissmiller, it was a supervisor release violation hearing. The court never discussed the guidelines range, but it was in the dispositional report. And this court found plain error because the court never mentioned the guidelines range. And that's exactly what happened in this case. The government relies on HIE, which is a case where the court did not find plain error. In HIE, the government attorney had discussed the guidelines range at the hearing, so it was clear that the court had taken it into account. But in this case, it was in a document, and that's all. So how would this work if we were to find plain error and reverse and remand? The prison term has been served already. I guess you'd look for credit against the supervised release term, where the judge could say, no, the sentence I originally imposed was fine. You served your time. Now complete your supervised release term. Yeah, I mean, the court could say, okay, on remand, I won't consider rehabilitation this time, and I still would impose the same sentence. Or it could say, I really didn't impose the sentence for rehabilitation purposes in the first place, and I'm going to reimpose the same sentence. Sure. Alternatively, the court might say, oops, I shouldn't have considered rehabilitation, and now I'm going to shorten your supervised release term to compensate. Are you asserting that a failure to independently calculate a guideline range is structural error? I'm not sure it's structural error. No, I mean, this court has seemed to treat it as per se plain error. If it's structural, the only time we say, look, Matt, you're absolutely going back, whether objected to or not, it's a per se reversal. Isn't that what structural error is? I guess that's right, but I don't think you need to treat this as structural error to reverse here, because in Rissmiller, the court said that there was prejudice, effect on the defendant's substantial rights, because had the court considered the guidelines range, it might have imposed a lower sentence. In Rissmiller, the court did impose a lower sentence. I mean, your client got a below-guideline sentence. That's not true. The guidelines range was 8 to 14 months, and the court imposed a 12-month sentence. Really? I thought that your colleagues on the other side assert that there was a higher range here. I don't think that's right, Your Honor. In fact, there was particular prejudice in this case, because the government referred to the probation officer's recommendation of a 12-month sentence, and, in fact, that is what the court imposed. But had it not been— But you said the court imposed 12 months and a day at your client's attorney's request to get the benefit of good-time credit. That's right. So the actual prison time was less than 12 months. That's true, Your Honor. Even with good-time credit, the total length of the sentence was still longer than Ms. Todd would have gotten if the court had imposed the bottom of the range at 8 months or less. I'm out of time. I'll save the rest for rebuttal. We'll get you back on rebuttal. But on rebuttal, we've talked about the various ways courts have gone about dealing with TAPIA error or how you deal with it in order not to be error. And is it a dominant factor or a driving force? That may be okay in certain circuits. Permissible comment may be okay in another circuit. Secondary concern or additional justification may be acceptable in some circuits. And in the Eleventh Circuit, of course, you can't even consider it. So when you come back, if you could tell us, if you were writing this opinion, what you would suggest as a good means to go. I will address that issue. Thank you. Ms. McKillop. Thank you, Your Honor. May it please the Court, my name is Emily McKillop. I represent the United States in this matter. So at the outset, was there any mention of the calculation of the guidelines range under 3553A? There was not, Your Honor. There was a mention of the recommendation. However, the record does show, and it was in the government supplemental appendix, that the dispositional report was sent to all parties. How does that help you? Doesn't our case law require the Court to make that calculation? Excuse me, Your Honor. In fact, you've got the person who wrote it here, so you better address that to him. Well, the requirement of stating the guidelines level on the record comes from Gunter. The statute requires that one consider it, but the requirement that it be stated on the record comes from Gunter. I did not find a case specifically holding that Gunter applies to revocation proceedings, but there are cases in which the courts have applied it. So I would say yes, there was error. The district court should have stated the guidelines calculation on the record. However, it does not meet the plain error standard. In this case, both issues is all about the plain error standard and the need to enforce it so that mistakes can get corrected in the district court where they should be. Okay, so you've confessed error as to the failure to calculate the guideline range. How is it not error for the district court to discuss at length the rehabilitation needs of the defendant and, indeed, to say things which you've heard Mr. Schuman quote that indicate that the rehabilitation issue was in the court's mind when imposing sentence? How, in the light of it, Tapia, is that not error? As the court observed during Mr. Schuman's argument, at best, the court's remarks are ambiguous. And this is a plain error standard. Ambiguity doesn't cut it. Well, at this point, I'm trying to get you away from the plain error standard and just focus on whether there was error, all right? There was not. So explain why. Why is it not error, given Tapia, for the court to have gone on at length about rehabilitation and, indeed, to have made remarks that make it sound like the court is saying, you need to be in, you know, you can't manage this outside. So I'm putting you inside. As Your Honor observed at the outset of this argument, these situations come up and present the district court with a trap, basically. They tend to involve extensive discussions of rehabilitation because the defendant has been in rehabilitation, has failed to comply with rehabilitation. The defense attorneys, as a general rule, argue that what the sanctions should be should be more rehabilitation. So most of the hearing is about it, and that's what the district court is talking about. The district court can't help but address it. Well, the district court can help but say things that make it sound like, and I'm putting you in jail because of it. Here, this is the language from Justice Kagan's opinion of Tapia at page 334. In this case, the sentencing transcript suggests the possibility that Tapia's sentence was based on her rehabilitative needs. If the Supreme Court's test is that the transcript suggests the possibility that the sentence is based on rehabilitative needs, how can it not be error here to look at the things that the district court was saying and say, well, it may be ambiguous, but there's a possibility that this sentence was based on rehabilitative needs? Your Honor, I'm glad that you raised that section of the Tapia opinion because I want you to look very carefully at the context in which those remarks occur. That is the section where the Supreme Court is sending the case back to the Ninth Circuit for further proceedings. The Supreme Court is carefully not taking over the Ninth Circuit's appropriate role of deciding whether there was actually error here. It's suggesting. It's saying it might be. I want you to look at those remarks in the context of what the facts were in Tapia. The facts in Tapia were pretty close to slam dunk. I'm lengthening your sentence so you can be in the RGAP. That's not suggests. Here we've got, and you should respond to your colleague's discussion of this, we've got the district court saying at page 122, if there's only one place where you think you can be without risk of taking drugs and you think you're doing well, she says, in effect, you're not dealing with reality. She then says later at page 133-134, certainly the plan that we had hoped would work does not work and it hasn't yet clicked with you and you really must have ongoing 24-7 supervision. In light of those statements, and given the language in Tapia, how do we look at that and say, you know what? That was okay. First, Your Honor, the test in Tapia is not the might be suggests. That's just a polite transfer of the case down to the Ninth Circuit. The test in Tapia, Your Honor. The test is you can't do this in any fashion. We consider whether the Sentencing Reform Act precludes federal courts from imposing or lengthening prison terms to promote the criminal defendant's rehabilitation. We hold that it does. That's the consideration. They say, you cannot, you are precluded from doing that. Isn't that the test? The test from Tapia is the phrase that is repeated like a drumbeat throughout the opinion and it is impose or lengthen. You cannot impose or lengthen a sentence for the purpose of rehabilitation. Now, to us, that suggests that the proper test is one of whether promoting rehabilitation was a causal factor in arriving at that sentence. It is not Vandergrift, I thought about it and maybe, you know, I didn't do anything bad. Vandergrift didn't say, I thought about it, but I didn't do anything bad. It said considered without any causal relationship. Well, doesn't consider mean, you don't think that's fairly implied in what the Eleventh Circuit was saying, that if you consider this in your sentencing, you've got a problem? Not if it does not relate. If it doesn't end up affecting the sentence, no, we do not have a problem. How about the dominant factor test? Does the dominant factor test work? The dominant factor test is closer. If I were to choose a case approach that is already written, I would go with the DelVal. That is a dominant factor, but that also endorses the causal factor test. Now, a dominant factor, the very use of the language dominant factor, implies that there could be subservient factors, right? It does. Okay, how can that be squared with what the Supreme Court said in Tapia? Tapia said, Congress is clear. You can't use rehabilitation. That is a consideration that cannot be on the table. Would you agree that that's the message of Tapia? You cannot. Those terms of length in your sentence, because of. Let me tell you what. Why don't we go through some language from Tapia? How about this? Quote, each actor at each stage of the sentencing process receives the same message. Do not think about prison as a way to rehabilitate an offender. That's language from the opinion at page 330. Or this one. Congress did not intend that courts consider offenders' rehabilitative needs when imposing prison sentences. That's from page 331. Or this one. So a court making the choice to impose a term of imprisonment should consider the specific rationales of punishment except for rehabilitation. That's from page 327. I mean, over and over and over again, the court says you can't consider rehabilitation. I mean, is there anything unclear about that? Your Honor, I would point you to page 332. And so this is a case in which text, context, and history point to the same bottom line. Section 3582A precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation. That says causal factor. I've just given you a whole series of quotes from the Supreme Court's decision which say Congress, in effect, did not intend that courts consider offenders' rehabilitative needs. And that is a statement. It seems pretty clear that they don't want this. Now, maybe it's actually saying the same thing you are. It can't affect the sentence in any way. And let's assume that's the case. How does the dominant factor test meet what Tati says? Because once you say dominant factor, by definition, aren't you opening the door to other factors that could enter into the sentence? Your Honor, that is why I prefer the First Circuit's test in the DelVal-Rodriguez, which was also endorsed by the full circuit in the United States v. Lemon case. DelVal speaks about the dominant factor, but they come down on the causal relationship. If the court's consideration has an effect on the sentence... Any effect. Yes, if you can show that if it lengthens the sentence or caused the court to impose a sentence of incarceration that it would not otherwise have imposed. If that was a necessary factor to the... When you say would not otherwise have imposed, isn't the message Tati is sending to courts, don't do...this is not a factor that can enter into your calculus at all. You cannot say, you know what, I'm doing this for your own good. You did...you broke the law. I found you with ten bags of heroin. You broke your supervised release. And this is going to be great for you because you're getting a program there. Is that a problem? Yes. Okay. And it's a problem. Maybe the court would have imposed that sentence anyway because of the ten bags of heroin, but the fact that the court frames it as, and this is a benefit to you, that's where the problem lies, correct? And, Your Honor, that is exactly why it's important on these cases that come in and play in our review that we hold the defendants to their standard to give them the incentive to stand up at the end of that sentencing and say, Your Honor, would you please clarify your sentence because it sounded to me like the court might have imposed it for the purpose of rehabilitation, and as we all know, that's a Tatia violation. Okay. Indeed. That's why we cannot just let this case slide and send it back. That's plain error. That is plain error, and that is crucial here. Indeed. But it sounds like you're agreeing that the way I framed it a moment ago in the hypothetical would be a Tatia error. Now, how is that in any meaningful way different from what the district court did here? And aren't we, is it what saves you, plain error and not the fact that there was no error? No, Your Honor, because everything the district court said was consistent with a legitimate purpose, and what the court said, I expect, it's my expectation that you'll participate in programs. Actually, the only thing the court really said was in the, Judge Jordan read some language on page 133, but you go on from that, the next paragraph. So in connection with revoking your supervised release, I am going to send you back to prison for a period of 12 months, during which it will be my expectation that you will be participating in both mental health treatment programs and drug addiction treatment programs. That's the nub. Well, it is an expectation. But that's about the only thing that really is common. There's nothing else noted. There's no other factor that I can see that's really actively considered but for rehabilitation. And it comes right after her statement that it didn't work for you before, so I'm giving you 24-7 supervision. When you read that, right? I mean, those two things are immediately adjacent. And what that says is we tried rehabilitation. We tried programs. It didn't work. So that's why we're trying something different. Therefore, it will be my expectation that you'll be participating in mental health treatment and drug addiction treatment programs. It sounds like we're going to try again. Let's hope this works. Well, that's an expectation, Your Honor, and you'll note that the district judge, who, of course, was a very experienced district judge, did not pretend to say that she had the ability to enforce that, that she couldn't bring about the defendant's participation in programs. That expectation is essentially a hope, and the law is quite clear. What other factors were considered? Incapacitation, Your Honor. That is the 24-hour supervision. It is preventing the defendant from committing additional crimes involving her drug use. And I would also note that during the discussion, the district court expressed a considerable amount of concern about the fact that the defendant was using heroin while caring for a toddler and infant. Let's go back to the paragraph that Judge Orton read. You've got to stop. When we're asking the questions, you have to stop. Otherwise, we can't hear the recording later. When we go to hear the recording, it's cross-talk. I realize it's stilted and it's not ordinary conversation, and it may seem actually impolite, but we've got questions, we need answers. So when we start to interrupt you, it will help if you stop, hear the question, and then answer. And what Judge Orton previously read. All right, well, Ms. Todd, certainly the plan, and that can only be the rehabilitation plan, that we had hoped would work, does not work. And it hasn't yet clicked with you. And what you really must have is ongoing 24-7 supervision. It sounds like that is you need rehab, rehabilitation. You can't be in a place like the halfway house. You have to have somebody there with you at least initially constantly. So in connection with revoking your supervisor's release, I'm going to send you back to prison for a period of 12 months, during which it will be my expectation that you'll be participating in these various treatment programs. Your Honor, supervision is not the equivalent of rehabilitation. Supervision is present. The district court knew very well that there was no guarantee of getting into a program. She knew, however, that the defendant was going to be watched, so she could not engage in criminal. You said to us in the beginning we have to look at the context. And the context was she did, Ms. Todd did all right, and stayed off drugs while she was in a supervised treatment program. But when she got to the halfway house, she faltered. Your Honor, the difference is that that first remark, comment about her doing well in the inpatient program, is about a rehabilitative program. The second comment about the 24-7 supervision is jail time. The judge knows perfectly well that the 24-7 supervision in jail time is only going to be prevention of the defendant from committing her misconduct. This judge knows that there is no guarantee she'll be in any programs. She expresses an expectation, which is really a hope, that that will be possible. But she knows that the 24-7 supervision is jail, and that is a legitimate purpose of imposing an imprisonment sentence. Speaking only for myself, I'm not sure that that's correct. Can I impose on Ms. Meehan? Can I impose just one last question, if I might? It is, you heard your colleague, Mr. Shuman, begin by saying we needed to overrule Doe. At one point in the briefing, I believe I saw, the government suggested we don't have to deal with Doe. It's unnecessary for us to address Doe here. If we were in light of TAPIA to think that Doe was incorrect law, why would we not take that up here? What counsels against doing that here? Your Honor, we need a holding that TAPIA does apply to revocation proceedings. Now, that's conceded here. We both agree. I hope the court agrees. We need that holding. In the course of that comment, it should probably be made about Doe, because Doe is obviously counteractive to that. But I don't know that this court needs to overrule it because it has been effectively overruled by TAPIA. All right. So we can address it, but we can address it in the sense of saying it's already abrogated, is what you're getting at. And, Your Honor, the other thing I would urge your court to do is to arrive at a standard so that district courts have some idea what they can and cannot say. Because in this case, there cannot have been any plain error, even if the court thinks that the district court did err in what she said, because the law was not plain. There is no standard in this circuit. As we've discussed, the standards differ widely across the circuits. And I would call to this court's attention, it's an unpublished decision, but it's recent, of Flores-Juarez v. United States, the decision written by Chief Judge Smith in exactly the same situation. What's the site? I am getting that right now, Your Honor. It has only a Westlaw site. 2018 W.L. 106-1402. And the important part is on page 4. Or it's the asterisk page 4. And I will read the important part without the sites. For an error to be plain, it must be clear or obvious rather than subject to reasonable dispute. Citing Puckett v. United States, the existence of divergent interpretations among the courts of appeals demonstrates a reasonable dispute about how to apply tapia. More sites. Thus, the very existence of a circuit split leads us to conclude that even if we were to find tapia error, Flores-Juarez simply cannot show that such error was plain. Accordingly, he cannot prevail on his tapia claim. Your Honor, the situation has not changed. The law has not been clarified. As I'm sure you're aware, there have been several cases with this identical issue, including the Shonewolf case that was argued only a few weeks ago. We still don't have a standard. There's nothing to guide the district court in what the district court can consider or not consider. What's an appropriate standard? We'll be asking the same thing of Mr. Shuman. What should the opinion say? What's the standard? And again, I would urge that the court focus on tapia's impose or lengthen language and require that the need to provide rehabilitation be a causal factor in either dispute. And does that have to be expressed? Because here we've read your language that certainly looks like rehabilitation was very much on the mind of the court in imposing sentence. And you've argued that that's not error. So it's almost as if the government is saying in order for there to be tapia error, the district court has to say something like, I'm sending you to jail for rehabilitation, which if that's the standard the government's seeking, doesn't that just undermine tapia completely? Isn't there something short of that? Okay. Then how would you frame the standard other than to say, it's pretty vague to say you can't impose or lengthen. That just adds nothing to what tapia says. You can't impose or lengthen because of a needed desire to provide rehabilitation. There has to be a showing that the consideration of rehabilitation gave the defendant more time. And here you're saying this 24-7 supervision language doesn't meet that standard as you've described it, right? Your Honor, because I don't believe that it is tied to rehabilitation as fortunately the court seems to be. We simply have a disagreement as to the proper interpretation of the district court's words. Of course, had an objection been made in the district court, this all could have been solved, which is why the court must respect the plain error standard and hold the defendant to his burden on every single step of that analysis. And the approach of the courts that you suggest that we consider is the one in DelVal? That would be the closest one in a reported decision, yes, Your Honor. Except, as I said, I believe DelVal does discuss the dominant factor to some extent. And for the reasons discussed by Judge Jordan, I am not a fan of the dominant factor test. I would hold out for a causal relationship leading to the defendant getting time to be able to handle what he wants. So don't follow DelVal? DelVal does talk about the causal relationship. Let me give you the same from the Fourth Circuit's decision in Lemon. I got it. We've got it. 777F3rd, 170. I got it. All right. Thank you very much, Your Honor. Thank you. Mr. Sheehan. So I want to answer the court's question on the proper standard for one moment before I do. The Flores-Juarez case, the split of authority among the circuits does not affect the outcome here because under any standard, any of the standards that the courts have adopted for assessing Tapia error, the court erred here. So the lack of clarity on that point is irrelevant to the error here, whether the court uses it. Is incapacitation of a drug addict an impermissible rehabilitation concern? It depends on the reason for incapacitating the drug addict. If the reason for incapacitating the drug addict is to benefit the drug addict, that is a rehabilitative justification that's not permissible. And, in fact, the Supreme Court addressed that exact point in Tapia. There's essentially two ways you could think of prison as rehabilitative. One is that the inherent solitude and confinement and supervision of prison might rehabilitate the offender, and the other is that some specific treatment program could rehabilitate the offender. And in Tapia, the Supreme Court said both reasons for imprisoning someone are prohibited. It's a total loss of faith in prison as a rehabilitative institution. Now, you could imprison someone to say, I'm going to protect the public from you by keeping you locked up. That would be a true incapacitative justification. And Judge Posner discusses this distinction in the Kupesko decision, which we quote in our brief. But in this case, the only violations that Ms. Todd committed were harmful to herself. She was in possession of drugs. She was using drugs. There was no crimes that she was charged with or anything like that. Criminal activity because she's acquiring controlled substances. I suppose that's right, but the court never said, I'm trying to protect other people from you. The court said, we're doing this, essentially said, we're doing this for your own good. So it's got to be plain language for you, too? I mean, you heard me asking Ms. McKellip and having a little bit of a challenge with the government framing it in a way that made it sound like to have Tapia error, you have to say, I'm doing this for a rehabilitation purpose. It sounds like you're on the flip side of that saying to avoid Tapia error, you can't even talk about prison unless you're expressly saying, and I'm putting you in prison to incapacitate you because of crimes that you have committed or may commit. Is it really got to be that, just that clear to avoid a Tapia error? I mean, I don't think there's magic words. I think the court sort of has to read the sentencing transcript and make a judgment call. So how would we do that, right? I mean, both sides, you know, understand the government not wanting to say, yeah, there was error, right? But let's assume for sake of discussion that we read this and thought, that transcript looks like rehabilitation was going on during the discussion. If we were to frame a test that would provide a reasonable standard, what should it be? How would we say it? I think you can't do better than quoting Tapia at page 327 where the court said, the sentencing court should consider the specified rationales of punishment except for rehabilitation, which should acknowledge as an unsuitable justification for a prison term. So sentencing court should consider all of the factors except for rehabilitation. Does that mean that the mention and discussion of rehabilitation will prompt people like you, a fine advocate, to come in and say, we talked about it, so clearly it was considered, and therefore it's error? Certainly not. If the court is addressing the defendant about the opportunities for a rehabilitation. Well, here it wasn't just talking about the opportunities. This was the whole presentation of the defense. You said, hey, well, we didn't bring it up. No, you guys did bring it up. Came into court talking about and saying, the whole pitch was, this woman needs help. We've got to get her rehab help. And the best rehab help is outpatient help. So are we laying a trap for district court judges that when people come in and, quite rightly, talk about their client's needs and that judge responds to that, that we're going to be hearing on appeal, that judge talked about that. They considered it. That's reversible error. How are we going to avoid that? Well, you may hear those arguments and you could reject them. Indeed, we're hearing them right now. Well, I think in this case, if the court seems to agree that it was more than just addressing her about the opportunities for prison, it was a reason for the sentence. I think the line should be, if the reason or if a reason for the sentence was rehabilitation, if it was a consideration in imposing a prison sentence, that's error. If it was just an extra, by the way, in prison there will be opportunities for rehabilitation, then that's not error. And that's straight from the Supreme Court's decision in Tapia. I think that the dominant factor test, I think that's essentially courts trying to get at the idea that you're allowed to discuss the opportunities for rehabilitation, but it's not supposed to be a consideration. But I don't think it really captures that distinction. The distinction is, are you considering rehabilitation and imposing a sentence, or are you just addressing the defendant about the opportunities that they may find when they're in prison? So are you guys on the same page? I'm hearing you both say that if it's a causal effect, the way you're using the word consideration is, it's actually got some causal effect on the way the sentence turns out. I mean, the way I think about it, when a court says- Stick with me. Sure. Go ahead and explain after, but that seems like a yes or no question. They've said, through Ms. McKillop, there needs to be some causality there. Otherwise, it doesn't make sense in light of Tapia. Are you agreeing with that or disagreeing with that? I suppose I agree, except that I think when a court mentions its considerations in imposing a sentence, those are all causal factors. That's why the court is discussing them as considerations. The sentencing explanation is supposed to be the reason for the sentence. So if the court is mentioning a consideration as rehabilitation, then rehabilitation is a causal factor in the sentence. So I don't think that to show error, we should have to prove somehow that there was a causal connection. I think we should have to show that it was a consideration in forming the sentence, because by definition, then it is a causal factor. So if a judge was to impose a sentence within guidelines range sentence and say this is the appropriate sentence for the factors mentioned in the sentencing statute, and by the way, Mr. Jones, I hope you participate in whatever programming is available to you, that would be a Tapia error. No, I don't think that would be a Tapia error. That would be like Nixon, this court's unpublished decision in Nixon, where the court said, I'm imposing a sentence to reflect the seriousness of the offense, and I hope in some way it aids in your rehabilitation. That's okay. That's okay. I mean, you sort of have to read the sentencing transcript and make a judgment call, and, yeah, that's my answer there. How about the Sixth Circuit test, which I somewhat read to ultimately be what I heard Ms. McGillop saying? You find error, quote, only where there is an identifiable basis for concluding that the district court based the length of the sentence of incarceration in part on rehabilitation, close quote. In other words, to use Ms. McGillop's language, you don't impose or lengthen the sentence based on rehabilitation. You know, I mean, I just don't think that courts are always that clear when they impose sentences. I'm trying to suggest a test. The Sixth Circuit, it found error in Kroll, quote, only where there is an identifiable basis for concluding that the district court based the length of the sentence of incarceration in part on rehabilitation, close quote. I mean, I guess it would depend on how the rule is implemented. It sounds like a form of causality. You're saying? The word causality, causal, that's not in Tapia. What Tapia says is Judge Jordan. He asked you a question about causality. Yeah, and my answer is that the considerations are causal, so I kind of see those as two sides of the same coin. But I think that, I mean, essentially I think this court should just quote Tapia, which says the court should consider all the justifications for imprisonment except for rehabilitation. I mean, what are the basic... But you know what the next thing is. Judges are going to, and justifiably so if you read the concurrence in Tapia, are going to want to have it at least somehow included in the equation, and this was a former district judge and a former U.S. attorney who wrote this. So I'm trying to get you to help us, and if you were writing this opinion, what would you say? Besides quoting back verbatim Tapia. I would say that when listing the reasons for the sentence, the court should not mention rehabilitation. Not mention it at all? When listing the reasons for the sentence. The sentence may not be justified. Now, as a bonus, as icing on the cake, while the defendant is in prison, some prisons, not all, offer rehabilitative services, and the judge may encourage the defendant to seek those out. Is what you just said any different from what I quoted to you from Kroll? I mean, I guess I don't think that we should have to prove a causal connection between the precise length of the sentence, because that's not always clear. The judges don't always explain exactly why they selected the length. Certainly in this case, the judge picked 12 months. Not an identifiable basis. So if you don't know, there's not an identifiable basis. All we know is there's an identifiable basis for concluding that the district court based the length of the sentence of incarceration in part on rehabilitation. I think that's what I hear you say. Yeah, I mean, and I guess that's why I keep resisting that. I don't. I mean, I think that it's both a decision to impose the sentence and the length. You know, I don't think we should have to prove that the length of the sentence was tied to rehabilitation in some way, because sentencing explanations aren't that clear. And the language of the statute says that, you know, the court should consider the 3553A factors, recognizing that prison is not an appropriate means of rehabilitation. I think that sort of sets the standard out pretty clearly. All right. Thank you both. Thank you. I take the matter under advisement and recess for the day.